**AFFIRM; and Opinion Filed July 26, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-14-01097-CR
_____

**DANIEL MAVERO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA13-71667L**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Brown

Appellant Daniel Mavero appeals his jury conviction for violation of a protective order.

After the jury found appellant guilty, the trial court assessed punishment at 365 days'

confinement and a $150 fine. In six issues, appellant generally contends (1) the evidence is

legally insufficient to support his conviction, (2) the trial court's charge contained egregious

errors, and (3) the trial court committed various errors related to the admission of extraneous

offense evidence. For the following reasons, we affirm appellant's conviction.

### Background

Appellant was charged by information with violation of a protective order. The

information alleged appellant intentionally or knowingly communicated with J.S., "a protected

individual and a member of the family and household, by contacting [her] via telephone . . . in

violation of an order issued by the 330th District Court . . . under authority of Section 6.504 and Chapter 85 of the Family Code and Article 17.292 of the Code of Criminal Procedure, and said communication was prohibited by the aforesaid order."

At trial, J.S. testified she and appellant had a sexual relationship that resulted in the birth of her son, J.K.S. J.S. later obtained a "Final Protective Order" in "child support court" because appellant sent her e-mails threatening to kill her. J.S. identified that Order, which was admitted into evidence without objection. The Order was issued by a Dallas County Family District Court[1] and prohibited appellant from, amongst other things, communicating with J.S. in any manner except through his lawyer or a third party that the family court had designated to arrange visitation between appellant and J.K.S. Although the Order recited appellant failed to appear at the hearing, J.S. testified that appellant was present during the hearing and knew about the Order.

On December 2, 2013, while the order was in effect, J.S. testified appellant called her at the VA Hospital, where she works. The call came from an inside line. J.S. immediately contacted the VA Police, showed them the protective order, and told them appellant had called her from inside the hospital. J.S. also reported the call to Dallas Police.

J.S. testified she did not believe appellant had accidently called her because appellant would call her to harass her when she did not respond to his e-mails. She further testified that appellant had sent her e-mails begging her to call him or to reply, but she did not respond. J.S. said she did not report the e-mails to police because appellant used fake e-mail addresses and it would have been difficult for her to prove he had sent them. She nevertheless knew he sent them because of their content.

---

[1] *See* TEX. GOV'T CODE ANN. § 24.638 (West) (identifying 330th Judicial District Court as a family district court).

Steven Girard is a patrol officer at the VA Hospital. Girard testified that he responded to J.S.'s call on the day of the offense. J.S. told Girard she had a protective order and that appellant had just called her from inside the hospital. Girard said the VA Police looked for appellant, but were unable to find him.

David Weisskopf, a domestic violence detective with the Dallas Police, testified he was assigned to investigate J.S.'s complaint. Weisskopf spoke to J.S., reviewed the protective order, and determined he needed to file a case. Weissekopf acknowledged that he based his decision on J.S.'s statement and that he did not obtain telephone records or video surveillance tapes from the VA Hospital to verify her claims.

After hearing the evidence, the jury found appellant guilty of violating the protective order. This appeal followed.

## Legal Sufficiency of the Evidence

In his first issue, appellant asserts the evidence is legally insufficient to support his conviction. In arguing this issue, appellant relies primarily on the State's failure to prove all of the manners in which the information alleged, and the jury found, he committed the offense.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the offense as defined by a hypothetically correct jury charge. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Estrada v. State*, 334 S.W.3d 57, 61 (Tex. App.—Dallas 2009, no pet.). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). When a charging instrument alleges alternative manners of committing an offense in the conjunctive, it is proper for the trial court to charge the jury in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Under section 25.07(a)(2)(C) of the penal code, a person commits an offense if, in violation of an order issued under section 6.504 of the family code, chapter 85 of the Family Code, or article 17.292 of the code of criminal procedure, he knowingly or intentionally communicates in any manner with a protected individual or a member of the family or household, if the protective order prohibits such communications. *See* TEX. PEN. CODE ANN. § 25.07 25.07(a)(2)(C)(West Supp. 2015).

In this issue, appellant first contends the evidence is legally insufficient to show J.S. was a member of appellant's family and household. The information alleged, in the conjunctive, that J.S. was "a protected individual and a member of the family and household." The application paragraph tracked the information's conjunctive allegations. According to appellant, the State was therefore required to prove J.S. was *both* a protected individual and a member of appellant's family and household.

However, a hypothetically correct charge would have allowed the jury to find this element of the offense if it found J.S. was either a protected individual or a member of appellant's family or household. *See Finster v. State*, 152 S.W.3d 215, 218 (Tex. App.—Dallas 2004, no pet.); *see also Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011). Because appellant does not dispute that J.S. was a protective individual, his complaint is without merit. *See Finster*, 152 S.W.3d at 218.

–4–

Appellant also asserts the evidence is legally insufficient to support his conviction because the State did not present evidence that the protective order was issued under the *authority* of chapter 85 of the family code, section 6.504 of the family code, and/or article 17.292 of the code of criminal procedure, as alleged in the information. In challenging this element, appellant does not claim the State failed to prove any *underlying* fact necessary for an Order to be issued under one of the applicable statutes. *See in re Winship*, 397 U.S. 358, 364 (1970) (due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Instead, it appears the *fact* appellant asserts the State failed to show was whether the family court intended to issue the Order under one of the applicable statutes and/or whether the Order was actually authorized by one of the applicable statues. Appellant relies on the Amarillo Court of Appeals opinion in *Hoopes v. State*, 438 S.W.3d 93, (Tex. App.—Amarillo 2014, pet. ref'd), to support his contention. In *Hoopes*, the Amarillo Court held that the question of whether an order was issued under the authority of the one of the applicable statutes was itself a factual element of the offense that must be supported by proof beyond a reasonable doubt. *Hoopes*, 438 S.W.3d at 95. The Amarillo Court relied on dicta in *Villarreal*, in which the Court of Criminal Appeals stated a hypothetically correct jury charge would state as an element of the offense that the defendant acted "in violation of a protective order issued . . . under Article 17.292, Code of Criminal Procedure." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

However, the Court of Criminal Appeals merely stated what section 25.07 itself provides; one of the elements of an offense under Section 25.07 is that a person acted in violation of an order issued under one of the applicable statutes. *Villarreal*, 286 S.W.3d at 327. Because the case did not concern that element of the offense, the Court did not indicate what instructions or

–5–

definitions a trial court should provide a jury to enable it to determine whether that element was satisfied. *See, e.g., Harvey v. State*, 78 S.W.3d 368, 373 (Tex. Crim. App. 2002) (trial court should instruct the jury that in violation of a protective order means in violation of a protective order issued after notice and hearing); *Watts v. State*, 99 S.W.3d 604, 611 (Tex. Crim. App. 2003) (jury determines facts in light of the law as charged by the court); *cf. Crabtree v. State*, 389 S.W.3d 820, 832 (Tex. Crim. App. 2012) (it is inappropriate to assign a jury the duty of determining legal question of whether an offense is a reportable offense under sexual offender registration statute). We do not read *Villrreal* court as holding the *authority* under which a protective order issued is *itself* a fact a jury must find.

Regardless, we conclude the Order in this case is itself sufficient to show it was issued under Chapter 85 of the family code, which contains the provisions for the issuance of protective orders when a person has filed an application for a protective order based on family violence. *See generally* TEX. FAM. CODE ANN. §§ 71.001–92.001 (West 2014). First, the Order shows it was based on an application for a protective order filed by J.S. *See* TEX. FAM. CODE ANN. § 85.001 (West 2014). The Order also recites it was issued following a hearing on that application and that appellant was duly and properly cited for the hearing. *See id.* at § 85.006. The Order also contains the findings a court must make when issuing a protective order under Chapter 85, including findings that family violence had occurred, that appellant was the person that committed the family violence, and that family violence was likely to occur in the future. *See id*. at § 85.001. We conclude the evidence is legally sufficient to show appellant violated an order issued under Chapter 85 of the family code.[2] *See Gaw v. State*, 05-08-00463-CR, 2009

---

[2] Contrary to appellant's suggestion, the State was not required to prove the order was *also* issued under the authority of section 6.504 of the family code and article 17.292 of the code of criminal procedure. *See Gardner v. State*, 05-05-00750-CR, 2006 WL 1413098, at *2 (Tex. App.—Dallas May 24, 2006, no pet.). Nor could it. A protective order cannot have been issued both by a criminal magistrate under article

WL 5193931, at *5 (Tex. App.—Dallas Dec. 17, 2009, no pet.); *Garrett v. State*, 03-14-00138-CR, 2015 WL 7166046, at *2 (Tex. App.—Austin Nov. 10, 2015, no pet.); *Mirabal v. State*, 02-15-00041-CR, 2015 WL 7567518, at *7 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (not designated for publication).

Finally, appellant asserts the evidence is legally insufficient to show he knowingly or intentionally violated the Order because the State failed to show he had notice of the protective order and its contents. However, Section 25.07 does not require the State to prove the defendant knowingly or intentionally violated the order, but that he knowingly or intentionally engaged in the prohibited conduct. *See* TEX. PEN. CODE ANN. § 25.07(a); *Harvey*, 78 S.W.3d at 373.

Nevertheless, in *Harvey v. State*, the Court of Criminal Appeals construed the term "in violation of an order" to include a culpable mental state for that element which, in effect, required the State to show the defendant had "some knowledge" of the order. *Harvey*, 78 S.W.3d at 373. In reaching that conclusion, the Court explained that the only protective orders that will support a conviction under rule 25.07 are those that are issued under statutes that require the person subject to the order to have either attended the hearing on the protective order or to have been given notice of the application for the protective order and hearing.[3] *Harvey*, 78 S.W.3d at 373 ("[i]t is the evident purpose of these procedures to insure that the person to whom the protective order applies has knowledge of the order, or at the very least such knowledge of

---

17.292 of the code of criminal procedure, TEX. CODE CRIM. PRO. ANN. art. 17.292 (West) (authorizing emergency protective order by a magistrate when defendant arrested for certain offenses), and also by a trial court in a civil proceeding under the family code.

[3] We recognize that after *Harvey*, the legislature amended section 25.07 to include orders issued under Chapter 7A of the code of criminal procedure. *See* TEX. PENAL CODE ANN. 25.07. Chapter 7A includes provisions for the issuance of ex parte temporary orders without hearing. The amendment took effect after the offense in this case and therefore does not alter our analysis.

the application for a protective order that he would be reckless to proceed without knowing the terms of the order).  The Court therefore determined "in violation of an order issued under section 6.504 or chapter 85 of the Family Code or article 17.292," means "in violation of an order that was issued under one of those statutes at a proceeding the defendant attended or at a hearing held after the defendant received service of the application for a protective order and notice of the hearing." *Harvey*, 78 S.W.3d at 373.

As noted above, the Order recites that appellant was duly and properly cited for the hearing on the application.  The Order further recites that "all necessary prerequisites of the law have been satisfied" and that trial court had jurisdiction over the parties and the subject matter.  These recitations are sufficient to show appellant had notice of the application for protective order and hearing.  *Dillard v. State*, 05-00-01745-CR, 2002 WL 31845796, at *5 (Tex. App.— Dallas Dec. 20, 2002, no pet.) (not designated for publication);  *Lincecum v. State*, 08-14-00015-CR, 2016 WL 1367107, at *3 (Tex. App.—El Paso Apr. 6, 2016, no. pet. h.).  Moreover, the jury could have further inferred appellant had notice of the application and hearing because J.S. testified appellant was present during the hearing.[4]  See *Lincecum,* 2016 WL 1367107, at *3 (trier of fact could infer from appellant's presence at the hearing that he was served with notice of the application for protective order and hearing).  We resolve the first issue against appellant.

---

[4] In this issue, appellant suggests J.S.'s testimony is in conflict with the family court's recitation that he did not appear for the hearing. However, it is the jury's role, as trier of fact, to resolve any conflicts in the evidence. *Williams v. State*, 301 S.W.3d 675, 684 (Tex. Crim. App. 2009). We nevertheless note that J.S.'s testimony is not necessarily in conflict with the recitation and, at trial, appellant did not claim otherwise or attempt to challenge her testimony. This Court's own records suggest he had good reason not to do so. Specifically, appellant appealed the protective order to this Court and, in his pro se notice of appeal, appellant sought to explain his failure to appear at the hearing. He stated that he had two hearings scheduled at the same time and intended to check in at both courts and juggle back and forth between them, but he was "unsuccessful." We recognize that the Notice of Appeal was not before the jury. We reference it only because it illustrates one of the many reasons an appellate court may not second guess a jury's credibility determinations.

**Charge Error**

In his second and third issues, appellant complains of charge error. Appellant did not make any objections to the trial court's charge, but he asserts the errors were egregious.

We review complaints of jury charge error by first determining whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as here, an alleged jury charge error was not objected to, we reverse only if an error was "so egregious and created such harm that the defendant has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (*citing Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm consists of errors affecting the very basis of the case or depriving the defendant of a valuable right. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id*.

Appellant first complains the charge failed to instruct the jury that it was required to find appellant attended the protective order proceeding or otherwise had *specific* knowledge of the existence of the order. Appellant asserts this error caused him to suffer egregious harm because "the application paragraph permitted the jury to find [him] guilty without finding that he knew about the order and thereby intentionally or knowingly violated same." However, as explained

above, the State was not required to prove appellant knowing or intentionally violated the protective order.[5]

Moreover, it is clear from our review of the record that appellant's knowledge of the Order was not a contested issue at trial. At trial, appellant did not question the recitations in the protective order that he was duly cited for the hearing or make any effort to controvert them. *See Dillard*, 2002 WL 31845796, at *5 (recitations in order are binding absent proof of their falsity). Moreover, when J.S. testified appellant was present at the hearing and knew about the order, appellant objected, claiming her testimony was irrelevant. We conclude the record fails to show appellant suffered egregious harm from the trial court's failure to instruct the jury with respect to whether appellant had sufficient knowledge of the Order. *Young v. State*, 283 S.W.3d 854, 880 (Tex. Crim. App. 2009) (even a jury instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence).

Appellant also complains the charge did not define "family" or "household." As noted above, the application paragraph required the jury to find J.S. was both a protected individual and a member of the family and household. The charge did not, however, include the statutory definitions of family or household. *See* Tex. Fam. Code Ann. §§ 71.003, 71.005 (West 2014) (defining family and household). According to appellant, he suffered egregious harm because of the omissions. Appellant's argument is based on the assumption that the jury was required to find J.S. was both a protected individual and a member of appellant's family or household.

---

[5] Here, the charge instructed the jury it was required to find appellant knowingly or intentionally communicated with J.S., in violation of the order. However, the charge should have instructed the jury that it was required to find that appellant, in violation of an order issued under one of the applicable statutes, knowingly or intentionally communicated with J.S. *Harvey*, 78 S.W.3d at 373. In other words, the in violation of a protective order language should have preceded the knowing and intentional mental states to reflect those mental states did not apply to the in violation of a protective order element. *Cf. Harvey*, 78 S.W.3d at 370 ("the culpable mental states 'intentionally or knowingly' in Section 25.07(a) apply to the performance of the acts that are described in the subsections that follow those words . . . [not] the preceding language "in violation of an order.").

–10–

However, as explained above, the charge should have permitted the jury to convict appellant if it found J.S. was either a protected individual or a member of the family or household. Because the charge in this case required the jury to find J.S. was a protected individual, we conclude the trial court's failure to define family or household in the charge did not cause appellant to suffer egregious harm. We resolve the second and third issues against appellant.

**Extraneous Offense Evidence**

In his fourth issue, appellant complains of the trial court's failure to sustain his "multiple objections" to evidence of extraneous offenses. Appellant generally complains of the admission of J.S.'s testimony that appellant would call to harass her when she did not respond to his e-mails and that he had sent her e-mails from fake addresses. In his fifth issue, appellant asserts the trial court erred in denying his motion for mistrial based on the admission of that same evidence and other evidence of extraneous "visits" he claims was admitted at trial. Finally, in his sixth issue, appellant complains the trial court erred in refusing his request to instruct the jury to disregard J.S.'s testimony.

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. TEX. R. EVID. 404(b); *see Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). However, this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). On timely request, the State must give the defendant notice of its intent to introduce such evidence. *Id.*

To preserve a complaint for appeal, a party must lodge a timely and specific objection, obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *see also Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). To be considered timely, the objection must be made at the first opportunity or as soon as the basis of the objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). A defendant must also object each time the inadmissible evidence is offered or obtain a running objection. *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Finally, an objection at trial must comport with the complaint asserted on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005); *Smith v. State*, 176 S.W.3d 907, 918 (Tex. App.—Dallas 2005, no pet.).

According to appellant, he preserved his complaints by making multiple objections to J.S.'s testimony. We disagree.

The record shows that J.S. first testified, without objection, that appellant would call her to harass her when she did not respond to his e-mails. The prosecutor then asked, "[n]ow, he's communicated with you, obviously, several times before; is that right?" J.S. responded "correct." Only then did appellant object on the basis of "character conformity." The trial court overruled that objection. J.S. proceeded to testify, without objection, that after the protective order issued, appellant had sent her emails using fake e-mail addresses. J.S. also testified she knew appellant sent them because of the things he said in the e-mails. When the prosecutor asked J.S. whether there were any personal details in the e-mails that made her believe appellant sent them, appellant objected on the grounds of relevancy. That objection was overruled.

J.S. proceeded to testify that she knew appellant sent her the e-mails because he called her crazy and begged her to call him or to reply to him. J.S. further testified that she did not respond to appellant because, when things did not go his way, he would start harassing her and making threats. Appellant did not object to that testimony.

Finally, the prosecutor asked J.S. whether appellant had communicated with her in any other manner. Appellant informed the trial court that J.S.'s testimony went to a motion in limine he had filed. The trial court conducted a hearing outside the presence of the jury. At that hearing, the State indicated that it intended to present evidence that appellant had communicated threats to J.S. through third parties. Appellant objected that the State had not given him reasonable notice that it intended to offer such evidence as required by rule 404(b). Appellant also complained, for the first time, the State had not given him notice of J.S.'s previously admitted testimony about appellant's direct communications. Appellant moved for a mistrial on those grounds. The trial court denied appellant's motion and the case recessed for the day.

The following morning, the State informed the trial court that it no longer intended to offer any additional extraneous offense evidence. Appellant nevertheless requested the trial court to instruct the jury to disregard J.S.'s previously admitted testimony. The trial court denied his request.

On appeal, appellant lumps together his complaints about J.S.'s testimony, claiming the trial court's rulings on his multiple objections were erroneous. Those objections, however, were made at different times, were directed to different testimony, and were based on different grounds. This issue is thus multifarious. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.) (a multifarious issue is one that embraces more than one

specific ground or that attacks several distinct and separate rulings of the court). We may refuse to address appellant's complaint on this ground alone. *See id.*

Moreover, after reviewing the record, we conclude appellant waived any complaint about the admission of J.S.'s testimony. Specifically, the record shows appellant's objections were either untimely, did not comport with his complaints on appeal, or were not re-urged when the same evidence came in elsewhere.

The only substantive arguments appellant makes to support his claims are based on rule 404(b). However, the only objections appellant made under rule 404(b) at trial were (1) a single objection to J.S.'s testimony that appellant had communicated with her in the past, and (2) a notice objection at the hearing outside the presence of the jury.

Initially, we note that appellant did not object on the basis of character conformity until after J.S. answered the prosecutor's question and affirmed that appellant had communicated with her several times in the past. *See Girndt v. State*, 623 S.W.2d 930, 934–35 (Tex. Crim. App. 1981) ("The well established law of this State has long been that after a question is asked and answered by a witness without objection, with no claim that there was any misunderstanding, or without any reason shown for not objecting before the answer was given, the refusal of the trial court to withdraw the answer from the jury or instruct the jury not to consider the answer is not error."). Moreover, appellant has not attempted to show that particular testimony constituted evidence of either an extraneous offense or a bad act. In fact, J.S. had previously testified that the reason she obtained the protective order was because appellant sent her e-mails threatening to kill her. Instead, appellant complains that J.S. was permitted to testify that he communicated with her *after* the protective order issued.

However, appellant did not object when J.S. testified appellant e-mailed her using fake e-mail addresses or that he would harass her when she responded to his e-mails. Rather, he only objected when the prosecutor asked J.S. about the contents of his e-mails, and even then, only on the basis of relevancy. *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993) (relevancy objection does not preserve a complaint under rule 404(b)). We conclude appellant did not preserve his complaint that J.S.'s testimony was inadmissible character conformity evidence.

Appellant also failed to preserve his complaint regarding the State's failure to give him notice of the extraneous offense evidence. Appellant did not raise that complaint until he moved for a mistrial outside the presence of the jury, well after the testimony had been admitted. Appellant's motion for mistrial, and complaints asserted therein, were untimely. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (motion for mistrial is timely only if it is made as soon as the grounds for it become apparent); *see also Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (essential requirement to preserve error is a timely, specific request that is refused by the trial court). Because appellant waived any error in the admission of J.S.'s testimony, it necessarily follows he was not entitled to an instruction to disregard. *See Cruz*, 225 S.W.3d at 548. We resolve the third, fourth, and fifth issues against him.

We affirm the trial court's judgment.

/Ada Brown/
_____
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141097F.U05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL MAVERO, Appellant

No. 05-14-01097-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 10, Dallas County, Texas

Trial Court Cause No. MA13-71667L.

Opinion delivered by Justice Brown. Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of July, 2016.