Rafael ESTRADA, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–07–01547–CR.

Court of Appeals of Texas, Dallas.

Jan. 30, 2009.

Rehearing Overruled Feb. 26, 2009.

Christian T. Souza, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Christine Womble, Asst. Dist. Atty., Dallas, for State.

Before Justices WRIGHT, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

Appellant was convicted of possessing a prohibited weapon, a switchblade knife, and sentenced to forty-five days in jail. Appellant raises five issues on appeal, challenging the trial court's denial of his motion to suppress, the legal sufficiency of the evidence, and the jury charge. We modify the trial court's judgment to correct a clerical error and affirm the trial court's judgment as modified.

### FACTUAL BACKGROUND

Police conducted surveillance outside the El Jardin Club in Dallas, Texas, where appellant was working as a bartender. Police watched a man go inside the club and come back out a minute later. After he drove away, they pulled him over and asked him questions. The man told police that he went to the club to buy drugs and that "it's the bartender that usually sells to him." Police went inside to do "a TABC check." [1] Once inside, they patted down appellant's clothing "to make sure he ha[d] no weapons on him for [their] safety." They did not find any weapons on appellant and proceeded to inspect the club. They found cocaine sitting on the top of an electrical box in the "employees only" room in the back of the club. Appellant told police he was the only one allowed in that room, and police arrested him for possession of cocaine. Before they put him in the squad car, police asked appellant if he had any weapons on him, and appellant told them he had a knife in his pocket. Police pulled the knife out of his pocket "and it was a switchblade." Ultimately, police could not link appellant to the cocaine. However, they charged appellant with possessing a prohibited weap-

1. The arresting officer testified that police entered the club "to make sure [the liquor] license [was] up on the bar; make sure if they're selling liquor, there's no bugs floating around in the liquor, or all the labels are on the beer bottles. That type of stuff." The Texas Alcoholic Beverage Commission "inspect[s], supervise[s], and regulate[s] every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, advertising, labeling, and distributing alcoholic beverages, and the possession of alcoholic beverages for the purpose of sale or otherwise." TEX. ALCO. BEV.CODE ANN. § 5.31(a) (Vernon Supp.2008). "By accepting a license or permit [to sell alcohol], the holder consents to the commission, an authorized representative of the commission, or a peace officer entering the licensed premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by [the alcoholic beverage] code." Id. § 101.04(a).

on. He pleaded not guilty and was convicted after a jury trial. The trial court sentenced him to forty-five days in jail.

### ANALYSIS

### Appellant's Motion to Suppress

■ In his first two issues, appellant contends that the trial court erred when it denied his pretrial motion to suppress the only physical evidence introduced in this case, the switchblade knife. In response, the State argues that appellant waived any complaint regarding suppression of the switchblade knife. We agree with the State. Appellant filed a motion to suppress, and the trial court denied the motion after a pretrial hearing. When the State asked the trial court to admit the switchblade knife into evidence during trial, appellant's counsel responded, "No objections."

The court of criminal appeals has held in similar situations that the suppression issue was not preserved for review. *See Moody v. State,* 827 S.W.2d 875, 889 (Tex. Crim.App.1992); *Dean v. State,* 749 S.W.2d 80, 82–83 (Tex.Crim.App.1988); *Harris v. State,* 656 S.W.2d 481, 484 (Tex. Crim.App.1983); *McGrew v. State,* 523 S.W.2d 679, 680–81 (Tex.Crim.App.1975). When evidence is offered during trial and defense counsel affirmatively represents that the defendant has "no objection" to the evidence, any error in the admission of the evidence is waived, even if the error had been previously preserved by a suppression motion and adverse ruling. *Moody,* 827 S.W.2d at 889; *Dean,* 749 S.W.2d at 82–83; *Harris,* 656 S.W.2d at 484; *McGrew,* 523 S.W.2d at 680–81. Because appellant's counsel affirmatively stated that he had no objection to the introduction of the evidence seized from appellant, we conclude that appellant did not preserve his complaints regarding the

admission of that evidence. We overrule appellant's first and second issues.

### Threshold Question: Definition of a Switchblade Knife

■ The disputed question at the center of appellant's third issue, claiming legal insufficiency, and his fourth and fifth issues, claiming jury charge error, is whether a switchblade knife must be capable of inflicting serious bodily injury or death in order to be a prohibited weapon under penal code section 46.05(a)(5). To answer this question, we must determine whether the definition of "switchblade knife" in penal code section 46.01(11) includes the definition of "knife" in penal code section 46.01(7). This appears to be an issue of first impression in Texas.

Under section 46.05 of the penal code, a switchblade knife is a prohibited weapon, and intentional or knowing possession of a switchblade knife is a Class A misdemeanor. TEX. PENAL CODE ANN. § 46.05(a)(5), (e) (Vernon Supp.2008). "Switchblade knife" is defined in penal code section 46.01(11) as

> any knife that has a blade that folds, closes, or retracts into the handle or sheath, and that:
>
> (A) opens automatically by pressure applied to a button or other device located on the handle, or
>
> (B) opens or releases a blade from the handle or sheath by the force of gravity or by the application of centrifugal force.

*Id.* § 46.01(11). Section 46.01(7) of the penal code defines "knife" as "any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument." *Id.* § 46.01(7).

The State contends that a switchblade knife does not have to be capable of inflicting serious bodily injury or death in order to be a prohibited weapon under section

46.05, because "switchblade knife" is separately defined in section 46.01(11), and that definition does not expressly incorporate the definition of "knife" from section 46.01(7). Appellant, on the other hand, argues that because the definition of "switchblade knife" includes the word "knife," we must also incorporate the definition of "knife" into the definition of "switchblade knife." We agree with appellant. Appellant was charged under chapter 46 of the penal code, and the definitions for certain words used in that chapter are contained in section 46.01. The beginning of that section explains that "[i]n this chapter" the listed words have certain meanings. *Id.* § 46.01. "Knife" is a defined term, and that definition applies every time that word is used in chapter 46. *Id.* Consequently, we hold that a switchblade knife must be capable of inflicting serious bodily injury or death in order to be a "switchblade knife" under section 46.01(11) and a prohibited weapon under section 46.05(a)(5).

**Third Issue: Legal Sufficiency of the Evidence**

█ In his third issue, appellant cites to the definition of "serious bodily injury" in penal code section 1.07(a)(46) [2] and argues that the evidence is legally insufficient to support his conviction because his knife "was too small and the blade was too dull to penetrate sufficiently to cause 'serious' injury or death." In response, the State argues that it did not have to prove that the switchblade knife was capable of inflicting serious bodily injury or death, because "Section 46.05 contains no such requirement." We have already rejected the State's contention that it was not required to prove that appellant's switchblade knife

could inflict serious bodily injury or death. Nevertheless, we disagree with appellant that the evidence in this case is legally insufficient to support his conviction.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense as defined by a hypothetically correct jury charge. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Because a switchblade knife must be capable of inflicting serious bodily injury or death in order to be a "switchblade knife" under section 46.01(11) and a prohibited weapon under section 46.05(a)(5), a hypothetically correct jury charge in this case would have included the definition of "knife." *See Harkins v. State*, 268 S.W.3d 740, 742–43 (Tex.App.-Fort Worth 2008, pet. ref'd) (citing *Arline v. State*, 721 S.W.2d 348, 352 n. 4 (Tex.Crim.App.1986)) ("If a phrase, term, or word that the jury must use to properly resolve the issues is statutorily defined, the trial court must submit the statutory definition to the jury."). Appellant argues that there was no evidence that his knife met the definition of "knife" because "there was no testimony that the knife was capable of inflict-

**2.** The penal code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann § 1.07(a)(46) (Vernon Supp.2008).

ing serious bodily injury or death." We disagree.

 Testimony that the knife was capable of inflicting serious bodily injury or death was not required in this case because the knife was introduced into evidence during trial. *See, e.g., Robertson v. State,* 163 S.W.3d 730, 731, 734 (Tex.Crim. App.2005) ("testimony describing the switchblade knife" not necessary to support deadly weapon finding because knife was introduced into evidence and fact-finder "had the opportunity to examine the weapon and ascertain for itself whether the weapon had physical characteristics that revealed its deadly nature"). The arresting officer identified the knife and demonstrated for the jury how it opened automatically with the push of a button on the side. The knife is included in our appellate record and we have examined it. When opened, the knife measures approximately 7.5 inches long, and the blade is just over 3 inches long and tapers to a point. After examining it, we conclude that the knife itself is legally sufficient evidence to prove that it was capable of inflicting serious bodily injury or death. *See, e.g., Robertson,* 163 S.W.3d at 734 (switchblade knife with "three-inch blade is large enough to inflict serious wounds"); *Salazar v. State,* No. 05–05–01477–CR, 2006 WL 1883325, at *3 (Tex.App.-Dallas July 10, 2006, no pet.) (not designated for publication) (despite testimony that knife "was too dull to cut onions," evidence sufficient to support conviction for aggravated assault with deadly weapon because "the knife's blade was six inches long, three inches wide, and tapered to a point"). And because the undisputed evidence also demonstrated that appellant's knife opens automatically when pressure is applied to a button on the handle, we also conclude that a rational jury could have found beyond a reasonable doubt the

essential elements of possession of a prohibited weapon, a switchblade knife. We overrule appellant's third issue.

## Fourth and Fifth Issues: Jury Charge Error

In his fourth and fifth issues, appellant complains about the jury charge. The abstract portion of the jury charge stated, in pertinent part, "Our law provides that a person commits an offense if he knowingly or intentionally possesses a prohibited weapon. A switchblade knife is a prohibited weapon." The application paragraph instructed the jury to find appellant guilty of possessing a prohibited weapon if they found from the evidence beyond a reasonable doubt that appellant "did unlawfully[,] knowingly or intentionally possess a switchblade knife, to wit: a knife that had a blade folded, closed or retracted into the handle and sheath and that could open automatically by pressure applied to a button or other device located on the handle."

 In his fourth issue, appellant argues that the trial court omitted an "essential element" from the jury charge by not including the definition of "knife" in the abstract portion of the jury charge, and by not asking the jury to find whether appellant carried a "knife" in the application portion of the jury charge. In response, the State argues that including the definition of "knife" in the charge would have improperly increased the State's burden because *"any knife*—even one that is not necessarily capable of inflicting serious bodily injury or death—that operates as a switchblade knife is a 'switchblade knife' under Section 46.01(11)." We have already rejected this argument and concluded that, in order to qualify as a prohibited weapon, a switchblade knife must also be a "knife" as defined by the penal code. Consequently, we agree with appellant that the trial court erred by not including the

definition of "knife" in the jury charge. *See Harkins*, 268 S.W.3d at 742–43 ("If a phrase, term, or word that the jury must use to properly resolve the issues is statutorily defined, the trial court must submit the statutory definition to the jury.").

 But because appellant argues jury charge error for the first time on appeal, we can reverse his conviction only if we determine that the error caused egregious harm. *Warner v. State*, 245 S.W.3d 458, 461 (Tex.Crim.App.2008). Errors result in egregious harm when they affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Id.* at 461–62. To make this determination, we examine the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* at 461.

Appellant argues that this error, "coupled with the absence of any testimony that Appellant possessed a 'knife,'" caused egregious harm. We disagree. We have already concluded that the physical characteristics of appellant's switchblade knife are legally sufficient to satisfy the definition of "knife." Consequently, we cannot conclude that the error in the jury charge caused egregious harm. We overrule appellant's fourth issue.

 Appellant's fifth issue is also premised on the fact that "knife" was not defined in the jury charge. Appellant argues that by omitting the definition of "knife" from the jury charge, "the trial court assumed for the jury that a 'switchblade knife' was a 'knife.'" He argues that this error caused egregious harm because the trial court improperly "in-

struct[ed] the jury to find that Appellant possessed a prohibited weapon" without regard to a proper, predicate finding that appellant's switchblade knife was capable of inflicting serious bodily injury or death. Again, we agree that the trial court erred when it instructed the jury that "a switchblade knife is a prohibited weapon" without also informing the jury that the switchblade knife had to be capable of inflicting serious bodily injury or death in order to be a prohibited weapon. *See Arline*, 721 S.W.2d at 352 n. 4. But again, because we have already concluded that the physical characteristics of appellant's switchblade knife are legally sufficient to satisfy the definition of "knife," we cannot conclude that the error in the jury charge caused egregious harm. We overrule appellant's fifth issue.

**Judgment Modification**

 The judgment in this case includes an affirmative finding of family violence.[3] The record does not contain any allegation of family violence, there was no evidence of family violence, the State did not request an affirmative finding of family violence, and there was no affirmative finding of family violence either by the jury or the trial court. We conclude that the affirmative finding of family violence reflected in the trial court's written judgment was a clerical error. This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX.R.APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex.App.-Dallas 1991, pet. ref'd). Our authority to modify incorrect judgments "is not dependent upon the request of any

---

3. The judgment states "AFFIRMATIVE FINDING OF FAMILY VIOLENCE, IF APPLICA- BLE: YES."

party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry*, 813 S.W.2d at 529–30. We modify the judgment to delete the affirmative finding of family violence.

### CONCLUSION

We overrule appellant's five issues, modify the trial court's judgment, and affirm the trial court's judgment as modified.