**Modify and affirm as modified; Opinion Filed October 4, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01264-CR

### ANTONIO RASHAWNE CARR, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 195th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1624697-N

# MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Stoddart

A jury convicted Antonio Rashawne Carr of aggravated sexual assault of a child, and the trial court sentenced him to thirty-six years' confinement. In his sole issue, appellant argues the trial court abused its discretion by excluding relevant evidence. In a single cross-issue, the State requests we modify the judgment to show appellant pleaded not true to the second enhancement paragraph and the trial court found the first enhancement paragraph true. We modify the judgment and affirm as modified.

FACTUAL BACKGROUND

The complainant's mother, M.J., was friends with appellant and they also had a sexual relationship. On October 1, 2016, M.J. went to a nightclub and left her children, including the complainant, A.D., at home. Early in the morning of October 2, appellant called M.J. and wanted

to walk to her house. She told him she was at a club. Appellant did not own a car and frequently walked to M.J.'s house, but sometimes he drove his girlfriend's black Charger.

A.D. went to sleep while wearing shorts, a t-shirt, underwear, and a bra. Her two siblings and baby cousin were in her bed. She was awakened by the doorbell around midnight. Appellant was at the door and A.D. let him in. Appellant went to her mother's room and A.D. returned to her own room to sleep. She woke up again. A.D. testified:

Q.    What woke you up?
A.    Antonio.
Q.    Where was Antonio?
A.    At the end of my bed.
Q.    Was it dark in your room?
A.    Yes.
Q.    Were you able to see that it was him?
A.    Yes.
Q.    You didn't have a question about that?
A.    No.

She felt appellant rubbing her calves and then her thighs, which A.D. thought was "weird" but she did not say anything. Appellant put his hand through the leg of her shorts and put two fingers into her vagina and he licked her inner thigh once. A.D. kicked her sister to awaken her, but her sister did not wake up. She told appellant to leave, which he did after giving $10 to her. After he left, A.D. looked out the window and saw appellant standing next to a car. She testified she then locked the front door.[1] She did not tell her mom what appellant did and the children were asleep when M.J. returned home.

Approximately one week later, A.D.'s friend, B.W., was spending the night at A.D.'s house when appellant arrived. A.D. was upset and began acting strangely. A.D. told B.W. "a little bit about what happened," and B.W. advised her to tell her mother. A.D. asked B.W. not to tell anyone. B.W. testified she told her mother the following day. She also testified her mother found

---

[1] M.J. testified the door to her apartment did not lock, and appellant knew this. The police confirmed the front door did not lock.

texts from A.D. on her phone that described what occurred. B.W.'s mother testified that she reviewed the content of B.W.'s phone and found "some disturbing text message[s] back and forth" between A.D. and B.W. After talking to B.W., the mother called A.D. who began crying and said appellant "was licking her on her thighs, licking her legs." A.D. may have said appellant licked her vagina, but B.W.'s mother was not sure. The mother told A.D. that A.D. must tell her mother and, if she did not do so, B.W.'s mother would come to her house.

A.D. came home upset and crying on October 11, 2016. M.J. testified that A.D. told her: "That he was licking on her thigh. He asked her if he could taste her." M.J. continued: "He inserted his finger into my 12 year old daughter [sic] vagina." The State asked: "She tell you who had done this to her?" M.J. replied: "She said Antonio." A.D. told her mother that appellant gave her $10 and left the house in a car.

A day or two later, Matthew Perry, a detective with the Garland Police Department, contacted M.J. The detective collected M.J.'s, A.D.'s, and B.W.'s phones. A forensic interview was conducted with A.D. After the interview, the detective issued a warrant for appellant's arrest for aggravated sexual assault of a child. When police approached appellant to arrest him, appellant was standing in front of the barbershop where he worked. Police asked to speak with him and appellant quickly walked away before beginning to run. Police pursued him and eventually used a Taser to subdue him.

Perry interviewed appellant the following day. The State played a redacted version of the interview for the jury. In the interview, appellant admitted he walked to M.J.'s house and knocked on the door, but stated he then left. Perry described appellant as "deceptive" and stated appellant provided several accounts about what occurred on the night of October 1.

The jury found appellant guilty of aggravated sexual assault of a child.

In a single issue, appellant argues the trial court abused its discretion by not permitting him to question witnesses about a text message A.D. sent to a friend on July 29, 2016 (two months prior to the instant offense) stating she was nearly raped by someone else. He asserts the evidence was both relevant to his defensive theory and more probative than prejudicial. *See* TEX. R. EVID. 401, 403. The text message was read into the record as follows:

> You really know I was almost raped by my mama's baby Daddy [sic]. Sorry. This shit fucks with my head everyday. She don't [sic] even know you. The first person. She doesn't even know that you're the first person I'm telling. That shuts down. That's why I shut down, I don't let anybody in. Cause [sic] they all end up leaving anyways [sic]. So I keep to myself.

The man identified as "my mama's baby Daddy" is S.C. Appellant asserted in the trial court that S.C.'s car was similar to that driven by appellant's girlfriend (and occasionally borrowed by appellant) and, thus, A.D. may have confused appellant for S.C. The State argued the evidence was not relevant and was more prejudicial than probative.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). The trial court abuses its discretion when the decision falls outside the zone of reasonable disagreement. *Id*. at 83. We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule 403 states that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762

(Tex. Crim. App. 2007). The admission of alternative perpetrator evidence is subject to the Rule 403 balancing test. *Wiley v. State*, 74 S.W.3d 399, 405-06 (Tex. Crim. App. 2002).

"When weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by 'alternative perpetrator' evidence." *Id.* at 406. "Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Id.* Evidence of an alternative perpetrator is inadmissible if it is mere speculation that another person may have committed the offense. *See id.* at 407 ("It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime." (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998))). Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice. *Wiley*, 74 S.W.3d at 407; *see also Nash v. State*, No. 05-15-01070-CR, 2017 WL 491256, at *5 (Tex. App.—Dallas Feb. 7, 2017, no pet.) (mem. op., not designated for publication).

Appellant has not shown a nexus between the crime charged and the excluded evidence. Although appellant asserts his girlfriend drove the same type of car that S.C. did, this does not create more than mere speculation that another person committed the offense. There is no evidence S.C. was at or near A.D.'s home on the night of the offense or that A.D. confused the two men. A.D. testified clearly that appellant was the man who assaulted her. Additionally, appellant admitted going to A.D.'s house and knocking on the door on the night of October 1, which placed him at A.D.'s house. Based on the evidence, there would have been no basis for the jury to conclude S.C. assaulted A.D. on the date of the offense at issue. The proffered evidence amounts

to no more than speculation that S.C. could have been the perpetrator. *See Wiley*, 74 S.W.3d at 407; *Nash*, 2017 WL 491256, at *5.

Even if we assume the excluded evidence concerning the text message had some relevance, the trial court could have reasonably concluded the proffered evidence did not survive the balancing test under Rule 403. *See Wiley*, 74 S.W.3d at 407. The probative value of the evidence was slight because of its highly speculative nature. *See id.* "It also presented a threat of 'unfair prejudice,' as it would invite the jury to blame an absent, unrepresented" person for an offense when there was no evidence that he was actually involved. *Id.* We conclude the trial conclude did not abuse its discretion by excluding the text message and related testimony. We overrule appellant's sole issue.

In its cross-issue, the State asks that we modify the judgment to reflect appellant pleaded not true to the second enhancement paragraph and the trial court found the first enhancement paragraph to be true. The judgment erroneously shows appellant pleaded true to the second enhancement paragraph and the trial court found the first enhancement paragraph to be not true. Accordingly, we modify the judgment to show appellant pleaded not true to the second enhancement paragraph and the trial court found the first enhancement paragraph to be true. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Estrada v. State*, 334 S.W.3d 57, 63–64 (Tex. App.—Dallas 2009, no pet.).

We modify the judgment and affirm as modified.


/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
171264F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTONIO RASHAWNE CARR,
Appellant

No. 05-17-01264-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1624697-N.
Opinion delivered by Justice Stoddart.
Justices Whitehill and Boatright
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We DELETE the word "True" under the heading "Plea to 2nd
Enhancement/Habitual Paragraph" and REPLACE it with the words "Not True."
We DELETE the words "Not True" under the heading "Findings on 1st
Enhancement Paragrah" and REPLACE them with the word "True."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of October, 2018.