**Affirm and Opinion Filed November 14, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00732-CR**

**TAVARIS LASHAWN WATSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-81725-2021**

## MEMORANDUM OPINION

Before Justices Partida-Kipness,[1] Nowell, and Smith
Opinion by Justice Nowell

A jury convicted Tavaris Lashawn Watson of burglary of a habitation and sentenced him to thirty-three years' incarceration. In two issues, appellant argues the evidence is insufficient to support the conviction and the trial court erred by admitting evidence that he spent time in a halfway house. In a single cross-issue, the State requests we modify the judgment. We modify the judgment and affirm as modified.

---

[1] The Honorable Leslie Osborne participated in the submission of this case; however, she did not participate in issuance of this memorandum opinion due to her resignation on October 24, 2022. The Honorable Robbie Partida-Kipness has substituted for Justice Osborne in this cause. Justice Partida-Kipness has reviewed the briefs and the record before the Court.

### A. Sufficiency of the Evidence

In his first issue, appellant asserts the evidence is insufficient to show he had the intent to commit theft, which is an element of the offense as charged. Appellant was charged with burglary pursuant to Texas Penal Code section 30.02(a)(1), which states a person commits an offense if, without the effective consent of the owner, the person enters a habitation with the intent to commit a theft. *See* TEX. PENAL CODE ANN. § 30.02(a).

When reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). The verdict will be upheld if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the weight and credibility of the evidence. *Edward*, 635 S.W.3d at 655. When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented. *Id*. Further, while jurors may not base their decision on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence. *Id*. The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if "the inferences

–2–

necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

The evidence presented at trial shows that at approximately midnight on Saturday, June 14, 2020, Chandra Marcell[2] arrived home and parked in front of her townhouse. As she was parking, she saw appellant walking and made eye contact with him. She got out of her car and went into her townhouse before returning to her car to retrieve another item. As she walked back to her townhouse, she was wearing a cross-body purse, carrying a larger purse in one hand, and carrying a grocery bag in her other hand.

Once inside, Chandra locked her front door. As she turned away from the door, she heard a "boom" and felt a "hard impact." She fell face down on the floor. When she turned over, she saw appellant, who had pulled his black tank top over his head, reaching over her, and she surmised he was trying to grab her cross-body purse.

Chandra's husband, Farrell Marcell, heard Chandra's car park in front of their townhouse, Chandra enter the home, and the door lock. Then he "heard a boom like the door [had] been kicked at, so I jumped up." In the living room, he saw appellant

---

[2] Chandra Marcell and her husband, Farrell Marcell, both testified at trial. Because they share a surname, we will refer to them by their first names.

trying to grab Chandra's purse. Farrell tackled appellant and the two began tussling. Once their physical fight moved outside, Chandra brought a meat cleaver to Farrell, and Farrell repeatedly hit appellant with the knife. Appellant sustained multiple lacerations and started bleeding heavily. DNA testing matched the blood on the meat cleaver to appellant.

Chandra called 911 and told the dispatcher that a man had broken into her house to rob her; the 911 call was played for the jury. When officers arrived, appellant appeared disoriented and "seemed out of it." One officer testified that appellant was "very lethargic almost. I mean, any time you have someone who's lost a considerable amount of blood - - his reactions are very delayed." Appellant struggled to follow instructions. Appellant was taken by ambulance to a hospital.

Chandra told the officers that appellant "had just tried to rob her." An officer testified that the implication of Chandra's report was that a theft occurred. He further testified that robbery involves taking or attempting to steal something from someone else; the person does not always obtain the property.

Later that morning, another officer arrived at the Marcell's home to gather additional information. While talking to the Marcells, a man approached the officer and said he located a black Nissan in front of his garage. The car was running and was not occupied, but there was a puddle of condensation beneath it. The man had already moved the car to a nearby parking space because it was blocking his garage. The officer located the Nissan and found appellant's identification card in the center

console. No keys were in the car. The police contacted a wrecker and impounded the car. Farrell later found a Nissan key fob on the ground, which, he testified, fell out of appellant's pocket while they were tussling.

Appellant regained consciousness and was released from the hospital later that day. Two days later, he contacted Detective Timothy Dowd to inquire about his impounded car. He told Dowd that his car had been stolen along with his wallet and everything else in his car.[3] When asked about the incident at the Marcell's townhouse, appellant denied any knowledge of the incident. Dowd told appellant he was looking for a man with cuts and lacerations who had been hit with a meat cleaver. Appellant told Dowd that he had "the wrong guy" and maintained he had no cuts or lacerations nor had he been to the hospital recently.

When interviewed by Dowd after his arrest, appellant claimed he had been drugged on June 14. Specifically, appellant explained a friend gave him a cigarette that must have been laced with something and, as a result, he had no recollection about the events of June 14. Appellant's hospital records showed he had PCP, TCH, and alcohol in his body and he was suffering from abnormal mental status. Appellant had not mentioned being drugged during his first conversation with Dowd, and Dowd considered appellant's new story "self-serving, farfetched. It's plausible that he was drugged, but that story changed."

---

[3] The record does not reflect why appellant called Dowd as opposed to another person working at the Allen Police Department.

Having reviewed the record, we conclude there is sufficient evidence for a jury to reasonably conclude appellant entered the Marcell's habitation without their consent and attempted to commit theft. The evidence shows Chandra made eye contact with appellant before walking into her house carrying two purses. Appellant promptly broke the door to the townhome, knocked Chandra down, and was standing over her attempting to grab her cross-body purse when Farrell began fighting appellant. While appellant argues he was drugged at the time and there is no evidence to show he had the intent to commit theft when he entered the home, the jury could have drawn reasonable inferences from the evidence presented and concluded appellant intended to take Chandra's purse. We conclude the evidence is sufficient to support the jury's verdict. We overrule appellant's first issue.

### B. Admission of Evidence

In his second issue, appellant argues the trial court erred by admitting evidence of his prior incarceration in a halfway house. During Officer Dowd's testimony, the State asked him about his second conversation with appellant. Dowd testified that appellant's recitation of events during their second conversation was different from their first conversation. The following exchange occurred:

> Q. Detective Dowd, does this Defendant then change his story?
> A. Yes, he does.
> Q. What does he say happens now?
> A. That - - he brought up the story about meeting a friend - - excuse me - - that he met that he knew from a halfway house and the friend gave him a cigarette.

Appellant's counsel immediately asked to approach the bench where a conference was held off of the record. The judge excused the jury and held a hearing outside the presence of the jury.

During that hearing, appellant's counsel moved for a mistrial on the ground that Dowd's testimony violated a limine order that the parties not refer or allude to appellant's criminal history. The State responded that the testimony did not elicit any prior criminal history; Dowd did not state that appellant had prior convictions or that appellant was at the halfway house. Further, the State asserted, appellant's counsel opened the door to the testimony by asking questions about where appellant obtained his drugs. Finally, the State asserted, the testimony was not about appellant, but was about the person who gave the drugs to appellant. The trial court denied the motion.

Although appellant argues the trial court erred by admitting Dowd's testimony, he did not object to Dowd's testimony on admissibility grounds and any objection to admissibility has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a) (preservation of error); *see also Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, because appellant did not object that the evidence was inadmissible but instead moved for a mistrial, appellant's complaint on appeal does not comport with his objection at trial and, accordingly, is not preserved for this reason as well. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial.").

However, out of an abundance of caution, we will consider appellant's second issue as a challenge to the trial court's ruling on his motion for mistrial. A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *see also* Cruz-Banegas v. State, No. 05-21-00256-CR, 2022 WL 2255724, at *4 (Tex. App.—Dallas June 23, 2022, pet. ref'd) (mem. op., not designated for publication). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ocon*, 284 S.W.3d at 884; *see also Cruz-Banegas*, 2022 WL 2255724, at *4.

We review a trial court's denial of a mistrial for an abuse of discretion. *Ocon*, 284 S.W.3d at 884; *see also Cruz-Banegas*, 2022 WL 2255724, at *4. We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon*, 284 S.W.3d at 884; *see also Cruz-Banegas*, 2022 WL 2255724, at *4. The ruling must be upheld if it was within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884; *see also Cruz-Banegas*, 2022 WL 2255724, at *4.

Because it is an "extreme remedy," a mistrial should be granted only when residual prejudice remains after less drastic alternatives have been explored. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016); *see Ocon*, 284 S.W.3d at 884–85 ("A mistrial is an appropriate remedy only in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors."). "Though requesting lesser

remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative." *Ocon*, 284 S.W.3d at 885.

In this case, appellant did not request a lesser remedy before seeking a mistrial. Dowd testified appellant met with a friend he knew from a halfway house. Assuming for purposes of this argument that Dowd's testimony violated a limine order,[4] any error could have been cured by an instruction to disregard. *See Gordy v. State*, No. 05-19-00444-CR, 2022 WL 632169, at *8 (Tex. App.—Dallas Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication); *Anderson v. State*, No. 05-16-01157-CR, 2017 WL 5897903, at *6 (Tex. App.—Dallas Nov. 29, 2017, pet. ref'd) (mem. op., not designated for publication). However, appellant did not request a lesser remedy. Accordingly, we will not reverse the trial court's judgment because any problem could have been cured by a less drastic alternative. We overrule appellant's second issue.

### C.  Modification of the Judgment

The State requests we modify the judgment to accurately reflect appellant's pleas to two enhancement paragraphs and the jury's findings on them. In the

---

[4] Appellant moved for mistrial on the ground that Dowd's testimony violated a limine order "not to refer to or allude to [appellant's] criminal history." No such limine order appears in our record. The clerk's record does include an order granting appellant's "Motion to Prevent State from Reading or Alluding to Nonjurisdictional Enhancement Count at or Before Guilt/Innocence Phase." That motion requested the State be precluded from reading or referring to the non-jurisdictional enhancement counts before the punishment phase of trial.

indictment, the State alleged two prior convictions to enhance appellant's punishment. Appellant pleaded not true to the enhancements, and the jury found them to be true. However, the trial court's judgment only reflects appellant's plea and the jury's finding as to one enhancement paragraph.

We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.) ("This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so."); TEX. R. APP. P. 43.2(b).

The record supports the State's requested modification. Accordingly, we sustain the State's cross-point and modify the judgment as requested.

### D.    Conclusion

We modify the trial court's judgment to show appellant pleaded not true to a second enhancement paragraph and the jury found the second enhancement paragraph to be true. As modified, we affirm the trial court's judgment.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

210732f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

–10–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TAVARIS LASHAWN WATSON,
Appellant

No. 05-21-00732-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-81725-2021.
Opinion delivered by Justice Nowell. Justices Partida-Kipness and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the heading "2nd Enhancement Paragraph," we **DELETE** the letters "N/A" and **ADD** the words "Pleaded Not True."

Under the heading "Finding on 2nd Enhancement Paragraph," we **DELETE** the letters "N/A" and **ADD** the words "Found True."

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 14th day of November, 2022.