**Modified and Affirmed and Opinion Filed October 31, 2024**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00091-CR

**PAMELA JOHNSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F20-20608-K**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Nowell

A jury convicted appellant Pamela Johnson of aggravated assault with a deadly weapon by threat and sentenced her to six years' confinement. The trial court suspended the sentence for six years and placed her on community supervision.

Appellant raises four issues on appeal. She challenges the sufficiency of the evidence supporting her conviction and rejecting her claim of defense of a third person. She argues the trial court abused its discretion by admitting certain extraneous offense testimony and by overruling her Texas Rule of Evidence 403

objection to the evidence.  Finally, she requests modification of the judgment to reflect the correct punishment.  As modified, we affirm the trial court's judgment.

## Background

Pamela and Curtis Johnson lived next door to Steve Washington and his wife for three years.  Washington and appellant had a history of disputes.  On July 8, 2020, appellant cut some limbs from the crepe myrtles that lined Washington's driveway but hung onto her property.  She placed them on Washington's property by his fence.  Although Washington did not mind appellant trimming the crepe myrtles, he did not appreciate her putting them back on his property, so Washington took the branches and placed them in front of appellant's door.  Appellant called the police, and they briefly came out to discuss the dispute but nothing transpired from the incident.

The DeSoto police department was familiar with appellant because she had been involved in a number of "neighbor feuds."  The call notes from incidents involving her consisted of 499 pages.  In 2017, the police department placed a mandatory three officer response alert for her home after she said a responding officer should be "taken out to the back lot and shot because he was worthless."

On July 11, 2020, Carmen Greer, who lived across the street from the Johnsons and the Washingtons, heard a verbal exchange outside her home.  When Greer heard Washington say, "Why do you need a gun, Pam?," she looked out the

window and saw appellant "brandishing a weapon in a threatening manner." Greer called 911.

There is a dispute surrounding the events that transpired before Greer heard the argument. According to Washington, he was cutting his grass and talking with another neighbor, Erik Sasser, while appellant and her husband, Curtis, were also outside working in their yard. Washington tried not to interact with them because appellant often made "derogatory" comments. Nonetheless, appellant began to "fuss" and was "talking crazy." Appellant then went inside her home, got a rifle, and pointed it at Washington. He felt threatened when appellant said, "You want to see your next birthday [don't] step across this line." Washington described appellant as standing with the rifle on her hip "with her knee bent and she was cocked back and ready to let go of the trigger." A neighbor's outside camera captured Washington yelling at appellant, and appellant telling Washington not to come onto her property because "It ain't worth dying over."

Eric Sasser had lived in the neighborhood for twenty-two years and was familiar with appellant. On July 11, he was helping Washington with his crepe myrtles and witnessed Washington's interactions with the Johnsons. According to Sasser, the situation did not escalate until appellant came outside and "took over the conversation." Sasser could not remember how it all started, but Washington and appellant were yelling, and appellant told Washington not to come into her yard. Appellant then went inside and returned with the rifle. She cocked it, aimed it at

Washington, and told him if he wanted to see his next birthday then he better not step across the property line.

Curtis testified the incident started over the branches and seeds of crepe myrtle trees that had "pitted" their driveway. Curtis admitted they cut the branches hanging on their property and placed them on Washington's side, and Washington did not like it. According to Curtis, on the day in question, Washington came over to their driveway, got face-to-face with him, and started yelling. Curtis described Washington as using a "dramatic" tone and putting on "a show" for the Sassers' benefit. Curtis did not mind Washington's words, but he had a problem when Washington turned to leave and bumped him in the chest. Curtis explained:

> So I got a weed eater because I'm trying to determine do I defend myself with this weed eater and at the same time I have to consider what is his buddies or partners going to do because I'm looking at them and they're right there, but I know that I may have to defend myself at this point. And before I could [do] that or make a decision he had walked off and that was the end of my and his interaction.

He was not afraid Washington was going to hurt him, and he admitted no one threatened his life. Curtis felt like appellant's actions were "just for show" so he want back to his yardwork.

On the day of the incident, appellant described Washington as "very volatile, animated." She testified Washington yelled and cussed at her but maintained she only told him to stay off her property.

After entering her home to get a tool to help with the yardwork, she returned to find Washington in her driveway face-to-face with Curtis. She explained Curtis

wore a "floppy hat," and Washington was underneath it and directly in Curtis's face. When Washington turned to leave, he bumped Curtis's chest.

She also saw the Sassers in Washington's driveway. She described Eric Sasser as "the influencer, kind of the like the Godfather of the neighborhood." She believed the Sassers could "whip [Washington] into a frenzy and he'd do whatever he was told." She was concerned for Curtis because Washington was younger and stronger. She walked to the back of her home and returned with a rifle.

Both Curtis and appellant denied that appellant cocked the rifle or pointed it at Washington, but appellant admitted she told him he would regret it if he came onto her property. When appellant heard the police coming up the street, she leaned the rifle against the hedges by her house.

Officer Jeremy Kirchner and Officer James Davidson responded to the "major disturbance" call involving a weapon. When they arrived, they observed Washington in his yard, appellant in her yard, and a rifle leaning up against the hedges within five feet of appellant and Curtis. Officer Kirchner made contact with appellant and Washington, and Officer Davidson secured the rifle. They obtained witness statements and detained appellant. Washington told officers he was in fear for his life when appellant pointed the rifle at him. She denied pointing the rifle at Washington but said she feared for her life when he "advanced onto her property" by walking up the driveway. She claimed everything was a "set up" and told the

officers the neighbors were "instigators." She did not, however, tell them Washington chest bumped Curtis or threatened her with a paver.[1]

Appellant was indicted for aggravated assault with a deadly weapon by threat. The jury rejected her self-defense claim, found her guilty as charged, assessed punishment at six years' confinement, and recommended suspending the sentence and placing her on community supervision. The trial court accepted the jury's recommendation, suspended imposition of her sentence, and placed her on six years' community supervision. This appeal followed.

## Sufficiency of the Evidence: Defense of a Third Person

In her first issue, appellant argues the evidence is legally insufficient for a rational jury to have rejected her claim of defense of a third person. The State responds the jury was free to assess the witnesses' credibility and viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to support her conviction.

We review the legal sufficiency of the evidence to support a jury's rejection of defense of third person under the standard in *Jackson v. Virginia*. 443 U.S. 307, 319 (1979); *see also Raza v. State*, No. 05-17-00066-CR, 2018 WL 1062451, at *2 (Tex. App.—Dallas Feb. 27, 2018, no pet.) (mem. op., not designated for

---

[1] Appellant testified that at some point during the day's events, Washington started coming towards her with a paver (landscaping brick) in his hand saying he was going to "F me up." Despite video footage capturing parts of the incident, she did not have video evidence corroborating these claims.

publication). In defense of a third person case, a court must review all of the evidence presented at trial in the light most favorable to the prosecution to determine if any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the defense of a third person beyond a reasonable doubt. *Id.*; *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

Appellant was charged with aggravated assault with a deadly weapon by threat. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (intentionally or knowingly threatening another with imminent bodily injury), 22.02(a)(2) (aggravated assault when person uses or exhibits a deadly weapon during commission of assault). A deadly weapon includes a firearm. TEX. PENAL CODE ANN. § 1.07(17).

The jury was instructed on defense of a third person. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(1)–(2)(A). A person is justified in using force or deadly force against another to protect a third person if under the circumstances, as the actor reasonably believes them to be, the actor would be justified under section 9.31 or section 9.32 in using force or

deadly force to protect herself against the unlawful force or unlawful deadly force she reasonably believes to be threatening the third person she seeks to protect and the actor reasonably believes that her intervention is immediately necessary to protect the third person. *Id.* § 9.33. A "reasonable belief" is defined as one that would be held by an ordinary and prudent person in the same circumstances as the actor. TEX. PENAL CODE ANN. § 1.07(a)(42).

A defendant has the burden of producing some evidence to support a claim of defense of others. *Braughton*, 522 S.W.3d at 730. Once the defendant does so, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only the State prove its case beyond a reasonable doubt. *Id.* A determination of guilt by the factfinder implies a finding against the defensive theory. *Id.*

The issue of defense of a third person is a fact issue to be determined by the factfinder. *Raza*, 2018 WL 1062451, at *3. As the sole judge of the weight and credibility given any witness's testimony, the factfinder is free to believe or disbelieve the testimony of all witnesses, and to accept or reject any or all of the evidence produced by the respective parties regarding the defensive issue. *Id.*

Viewing the evidence in the light most favorable to the verdict, a rational jury could have rejected appellant's defense of a third person. The only evidence supporting appellant's defense-of-a-third-person theory came from appellant and Curtis, who both claimed appellant retrieved the rifle after Washington came onto

–8–

their property and bumped Curtis's chest. However, no other witnesses testified to seeing any physical contact. There was no video footage capturing the alleged chest bump, and appellant admitted she never told responding officers about it.

Washington, Sasser, and Greer testified appellant threatened Washington, who was unarmed, with a rifle. Greer testified that when she looked out her window, she saw appellant "aiming" the gun from her hip at Washington. She described appellant as "definitely angry," but she did not seem frightened of Washington. Further, Curtis testified that before he decided whether he needed to defend himself against Washington, Washington walked away and their interaction ended. At that point, Curtis was not afraid Washington was going to hurt him. A rational jury could have determined appellant did not have a reasonable belief she needed to immediately intervene with a deadly weapon and protect Curtis against an unarmed man because any alleged threat had ended. TEX. PENAL CODE ANN. §§ 1.07(a)(42) (defining "reasonable belief"), 9.33 (defense of a third person).

Appellant's testimony that she was concerned for Curtis because Washington was younger and stronger and she knew Sasser could "whip [Washington] into a frenzy," at best, supported a conclusion that she threatened Washington because she thought he might attack her husband. However, to be justified in using force to protect a third person, the third person must have been in immediate danger. *Henley v. State*, 493 S.W.3d 77, 92 (Tex. Crim. App. 2016). "An imagined scenario is not enough." *Id.*

We must defer to the jury to judge the credibility of witnesses, assign weight to their testimony, and draw reasonable inferences from basic facts to ultimate facts in reaching its verdict. *Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the verdict, we conclude a rational factfinder could have found beyond a reasonable doubt that appellant committed aggravated assault with a deadly weapon by threat and that her actions were not justified by her purported defense of Curtis. *Id.* We overrule appellant's first issue.

## Extraneous Offense Evidence

In her second and third issues, appellant argues the trial court abused its discretion by allowing extraneous offense testimony in violation of rule 404(b) and rule 403. *See* TEX. RS. EVID. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") & 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). The State responds that appellant failed to preserve her objections to extraneous offense testimony and error, if any, in the admission of the evidence in violation of rule 403 was harmless because appellant failed to object when the State presented similar testimony.

The State called Tonya Medina as a State rebuttal witness after the defense presented its case. The trial court overruled appellant's objections that Medina's testimony was "irrelevant and would be more prejudicial than probative."

Medina testified her family moved next door to appellant in 2014. She interacted with appellant and thought she was a "very nice, kind, older lady." Medina agreed to complete several repairs that appellant demanded, but Medina eventually stopped acquiescing because it felt like appellant's demands would never end. When Medina stopped giving into appellant's demands, appellant's attitude changed. Appellant complained about everything and "terrorized" her. Medina testified appellant "would literally walk about with the rifle," and she was smart enough to stay out of sight of Medina's outdoor cameras. Medina's young children were afraid to play outside because of appellant. Medina described an incident in which appellant threatened her husband with a gun because she was upset over construction in their backyard. They finally decided to move because of appellant's behavior towards them.

We review the trial court's admission or exclusion of evidence under an abuse of discretion of standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Unless the trial judge's decision was outside the "zone of reasonable disagreement," an appellate court should uphold the ruling. *Id.*

Though appellant argues the trial court abused its discretion by admitting Medina's testimony in violation of rule 404 (b), appellant did not make a rule 404(b)

objection. Instead, she objected that Medina's testimony was "irrelevant." To preserve error for appeal, a party must make a timely objection that states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). An argument on appeal must comport with the objection raised at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Accordingly, because appellant did not object based on rule 404(b), she preserved nothing for review. TEX. R. APP. P. 33.1; *Willis v. State*, No. 07-23-00244-CR, 2024 WL 1724273, at *1 (Tex. App.—Amarillo Apr. 22, 2024, no pet.) (mem. op., not designated for publication). We overrule appellant's second issue.

We next consider whether the trial court abused its discretion by overruling appellant's rule 403 objection. The court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." TEX. R. EVID. 403. Even assuming the trial court erred by admitting Medina's testimony, any such error was harmless. Any error in admitting evidence is cured if the same evidence is admitted elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Willis*, 2024 WL 1724273, at *2. This rule applies regardless of whether the evidence was received before or after the challenged ruling. *Willis*, 2024 WL 1724273, at *2.

Here, the jury heard other instances, without objection, of appellant wielding a gun and engaging in antagonistic behaviors. Washington testified appellant pulled a gun on him when he used her driveway to turn around. He described the gun as her "conversation piece." Greer similarly testified that Washington told her appellant previously pulled a gun on him when he parked in front of appellant's house. Sasser described an incident in 2017 in which his mother-in-law used appellant's driveway to turn around, and appellant then hit his mother-in-law's car with an object. When Sasser confronted appellant, she threatened him with a pistol. Officer Kirchner testified the whole department was familiar with appellant, and he knew of a previous incident in which appellant pulled out a revolver during a neighbor dispute. Because the jury heard this testimony without objection, which was similar to Medina's testimony, any error in admitting Medina's testimony was harmless. *Valle*, 109 S.W.3d at 509. We overrule appellant's third issue.

## Modification of the Judgment

In her final issue, appellant asks the Court to modify the judgment because it incorrectly reflects her punishment as "7 years institutional division, TDCJ" and the "sentence of confinement suspended, defendant placed on community supervision for 7 years." The State agrees modification is appropriate.

This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.).

Here, the jury assessed appellant's punishment as six years confinement and recommended the trial court suspend the sentence and place her on community supervision for six years. The trial court pronounced her sentence in accordance with the jury's verdict. Accordingly, we sustain appellant's fourth issue and modify the judgment to reflect appellant was sentenced to "6 years institutional division, TDCJ" and the "sentence of confinement suspended, defendant placed on community supervision for 6 years."

## Conclusion

As modified, we affirm the trial court's judgment.


230091f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAMELA JOHNSON, Appellant

No. 05-23-00091-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F20-20608-K.
Opinion delivered by Justice Nowell. Justices Reichek and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** "7 YEARS INSTITUTIONAL DIVISION, TDCJ," and **REPLACE** with "6 YEARS INSTITUTIONAL DIVISION, TDCJ" under "Punishment and Place of Confinement."

We **DELETE** "SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR 7 YEARS" and **REPLACE** with "SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR 6 YEARS."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of October, 2024.